# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

KIM S. MCCLAIN-LEAZURE,
              Petitioner,

        v.

SOCIAL SECURITY
   ADMINISTRATION,
              Respondent.

DOCKET NUMBER
CB-7521-17-0007-T-1

DATE: August 14, 2023

## THIS ORDER IS NONPRECEDENTIAL[1]

Kim S. McClain-Leazure, Calera, Alabama, pro se.

Marcus Johns, Esquire, and Natalie Liem, Esquire, Atlanta, Georgia, for
    the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

### REMAND ORDER

The appellant[2] has filed a petition for review of the initial decision, which found she was not constructively removed from her administrative law judge

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

[2] Although proceedings under 5 C.F.R. § 1201.142 do not lie within our appellate jurisdiction, for the sake of clarity we follow our usual practice of referring to the

(ALJ) position. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and REMAND the case to an ALJ for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2    Prior to her resignation, the appellant was an ALJ with the agency's Office of Disability Adjudication and Review in Mobile, Alabama. Initial Appeal File (IAF), Tab 1 at 7. In October 2015, the parties entered into a settlement agreement that resolved a pending complaint before the Equal Employment Opportunity Commission (EEOC). IAF, Tab 53 at 3-9. In exchange for consideration including a lump sum payment and leave adjustments, the appellant agreed to the withdrawal and dismissal of the EEOC complaint as well as all pending equal employment opportunity (EEO) complaints and pending complaints with the Office of Special Counsel. *Id.* at 3-5. The agreement also contained a waiver of appeal rights concerning the events underlying the EEOC complaint and any employment-related actions that occurred before the agreement's effective date:

> Complainant represents that she will file or submit no other complaints, grievances, or administrative or judicial actions with respect to the events underlying this complaint with any administrative agency, arbitrator, Court, or legislative body. Additionally, Complainant represents that she will not file a complaint, grievance, or administrative or judicial action against the agency, or any officer or employee thereof, with respect to any action that relates to or arises out of her employment with the agency and that occurred prior to the effective date of this Settlement Agreement.

*Id.* at 5.

¶3    The appellant remained in her position, but on or about October 4, 2016, she submitted a letter of resignation, citing her medical condition and the

complainant as the "appellant." *See, e.g.*, *McDougall v. Social Security Administration*, 114 M.S.P.R. 534, ¶ 1 (2010).

agency's alleged failure to provide reasonable accommodation. IAF, Tab 55 at 7. On October 24, 2016, the agency issued a Standard Form 50-B recording her resignation effective that same day. IAF, Tab 1 at 7. The appellant subsequently filed an appeal form with the Board. *Id.* at 1-5. On the form, she indicated that she had involuntarily resigned and raised claims of whistleblower retaliation and denial of reasonable accommodation. *Id.* at 3.

¶4      The case was assigned to an ALJ. IAF, Tab 2. At the outset of the hearing, the agency moved to exclude any testimony concerning events that occurred before October 10, 2015, the effective date of the settlement agreement. Hearing Transcript (HT) (May 10, 2017) at 15-16, 22. The presiding ALJ granted the motion over the appellant's objections. *Id.* at 26. Following the hearing, the presiding official issued an initial decision finding that the appellant failed to show that her resignation was involuntary and that she therefore had no right to appeal to the Board. IAF, Tab 56, Initial Decision (ID) at 2, 28-29. The presiding ALJ further found that, in the absence of an appealable action, the Board also lacked jurisdiction over the appellant's claims of whistleblowing reprisal and failure to accommodate. ID at 22-25, 26-27.

¶5      In her petition for review, the appellant argues that the presiding ALJ erred in his ruling excluding testimony concerning events before October 10, 2015. Petition for Review (PFR) File, Tab 1 at 5-16. She contends that the waiver provision extends no further than the specific claims at issue in the formal EEOC complaint and that the agency voided the agreement by breaching it. *Id.* She further asserts that the agency made misrepresentations before the Board and that the presiding ALJ made inappropriate comments and interruptions that took a toll on her health and deprived her of a full and fair hearing. *Id.* at 16-18. She contests various findings of fact in the initial decision and submits additional evidence, including medical documentation concerning her disability. *Id.* at 18-30, 32-91. The agency has filed a response. PFR File, Tab 3.

**ANALYSIS**

¶6        Section 7521 of Title 5 of the U.S. Code provides that an ALJ may be removed only for good cause determined by the Board after opportunity for a hearing.  While proceedings under 5 U.S.C. § 7521 are typically initiated by the employing agency, the Board's regulation at 5 C.F.R. § 1201.142 provides that an ALJ who alleges a constructive removal or other action in violation of 5 U.S.C. § 7521 may file a complaint with the Board, to be processed and adjudicated in the same manner as an agency complaint seeking disciplinary action.  In such a case, the only issue before the Board is whether the alleged action falls under 5 U.S.C. § 7521[3] and was taken prior to the hearing and Board decision required under that section.  *Matter of Doyle*, 29 M.S.P.R. 170, 174 (1985), *superseded by regulation on other grounds as stated in Mahoney v. Donovan*, 721 F.3d 633, 637 (D.C. Cir. 2013).  A showing to that effect is sufficient to establish that the agency acted unlawfully and that the ALJ is entitled to relief.  *Id.*  Like all cases involving actions against ALJs under 5 U.S.C. § 7521, complaints filed under 5 C.F.R. § 1210.142 lie within the Board's original jurisdiction.  *McDougall v. Social Security Administration*, 114 M.S.P.R. 534, ¶ 6 (2010); 5 C.F.R. § 1201.2(c).

¶7        To establish a constructive removal claim under 5 C.F.R. § 1201.142, the appellant must establish that her decision to leave the position of ALJ was involuntary under the same standard used in appeals implicating 5 U.S.C. § 7512.  *Tunik v. Social Security Administration*, 93 M.S.P.R. 482, 493 (2003), *vacated on other grounds*, 407 F.3d 1326 (Fed. Cir. 2005); *see* 70 Fed. Reg. 48081, 48081 (Aug. 16, 2005) (revising section 1201.142 to comport with the *Tunik* standard), *adopted as final*, 71 Fed. Reg. 34231 (June 14, 2006); *see also Mahoney*,

---

[3] Section 7521 covers the following actions:  a removal, a suspension, a reduction in grade, a reduction in pay, and a furlough of 30 days or less.  5 U.S.C. § 7521(b).

721 F.3d at 637 (acknowledging the 2005 revision).[4]  Under that standard, a decision to resign is presumed to be a voluntary act outside the Board's jurisdiction, and the appellant bears the burden of establishing by preponderant evidence that her resignation was involuntary and therefore tantamount to a forced removal.  *Hosozawa v. Department of Veterans Affairs*, 113 M.S.P.R. 110, ¶ 5 (2010).  To overcome the presumption that resignation is voluntary, the employee must show that it was the result of the agency's misinformation or deception or that she was coerced by the agency.  *Id.*  When, as in this case, the appellant alleges that her resignation was coerced by the agency's creating intolerable working conditions, she must show that a reasonable person in her position would have found the working conditions so oppressive that she would have felt compelled to resign.  *Id.*; *Heining v. General Services Administration*, 68 M.S.P.R. 513, 520 (1995).  As is the case with all alleged constructive actions, the appellant must demonstrate that (1) she lacked a meaningful choice in the matter, and (2) it was the agency's wrongful actions that deprived her of that choice.  *See Bean v. U.S. Postal Service*, 120 M.S.P.R. 397, ¶ 8 (2013).

¶8      In determining whether a resignation is voluntary, the Board considers allegations of discrimination and retaliation insofar as they relate to the issue of voluntariness and does not address whether the evidence is sufficient to prove unlawful discrimination or retaliation.[5]  *Neice v. Department of Homeland Security*, 105 M.S.P.R. 211, ¶ 8 (2007); *Markon v. Department of State*, 71 M.S.P.R. 574, 578 (1996); *Burke v. Department of the Treasury*, 53 M.S.P.R. 434, 439 (1992).  Hence, for purposes of determining our jurisdiction, we do not reach the question of whether the appellant was subjected to a hostile work

---

[4] The regulation was again revised in 2012 to correct a typographical error.  *See* 77 Fed. Reg. 62350, 62359 (Oct. 12, 2012).

[5] Conversely, if an agency's actions do constitute unlawful discrimination or retaliation, the appellant still must show how those actions coerced her resignation.  *Tripp v. Department of the Air Force*, 59 M.S.P.R. 458, 461 (1993).

environment in violation of the Whistleblower Protection Act or the antidiscrimination statutes.[6] For the same reason, we need not decide to what extent the appellant may have waived her right to assert such claims when she entered into the settlement agreement.[7] In any event, the settlement agreement's waiver provision covers the filing or submission of complaints, grievances, or administrative or judicial actions "with respect to the events underlying" the complaint of discrimination. IAF, Tab 53 at 3-4. It does not prohibit the appellant from filing an administrative action concerning events occurring after the effective date of the settlement agreement, like this appeal, and submitting relevant evidence during the course of that permissible action that predates the settlement agreement. Therefore, the question before us is whether, for whatever reasons, a reasonable person in the appellant's position would have found her working conditions so oppressive that she would have felt compelled to resign. *See Heining*, 68 M.S.P.R. at 520.

¶9      The U.S. Court of Appeals for the Federal Circuit has held that in determining whether a reasonable person in the appellant's position would have felt compelled to resign, the Board "need not limit itself to any particular timeframe." *Terban v. Department of Energy*, 216 F.3d 1021, 1024 (Fed. Cir. 2000). The most probative evidence of involuntariness will usually be events occurring a relatively short period of time between the alleged coercive act and the employee's resignation. *Id.* In contrast, a long period of time between the

---

[6] Similarly, the agency's alleged failure to provide the appellant reasonable accommodation is simply a factor to be considered in assessing whether her resignation was involuntary. *Brown v. U.S. Postal Service*, 115 M.S.P.R. 609, ¶ 16, *aff'd*, 469 F. App'x 852 (Fed. Cir. 2011).

[7] To the extent the appellant contends the agency breached the agreement, PFR File, Tab 1 at 9, we are unable to address that allegation. The Board does not have authority to enforce or invalidate a settlement agreement reached in another forum. *See Lee v. U.S. Postal Service*, 111 M.S.P.R. 551, ¶ 4 n.2 (2009), *aff'd*, 367 F. App'x 137 (Fed. Cir. 2010). The appellant's request for the Board to find the agency has breached the terms of the agreement is tantamount to a request for enforcement of the agreement. *See Lopez v. U.S. Postal Service*, 71 M.S.P.R. 461, 463 (1996).

alleged coercive act and the employee's resignation diminishes the causal link between the two events and, thus, attenuates the employee's claim of involuntariness. *Id.* Thus, in *Terban*, the Federal Circuit found that the Board acted within its discretion in giving relatively little weight to events that occurred more than 14 days prior to the appellant's retirement in determining whether he was coerced into retirement. *Id.* Rather, the court found the appellant's own actions in tolerating a long period of what he considered to be harassment indicate that he had an alternative to retirement. *Id.* at 1024-25. Similarly, in *Searcy v. Department of Commerce*, 114 M.S.P.R. 281 (2010), a case involving an alleged involuntary resignation, the Board found that when the allegedly coercive acts by the agency were raised in an EEO complaint filed 5 months before the appellant's resignation, the lapse in time undercut the appellant's claim of involuntary resignation. *Id.*, ¶ 13. Thus, events occurring prior to the settlement agreement, which became effective approximately 1 year before the appellant's resignation, are entitled to relatively little weight.

¶10     Nonetheless, in determining whether a reasonable person in the appellant's position would have felt compelled to resign, the Board is required to consider the totality of the circumstances, including events not immediately preceding the resignation. *Shoaf v. Department of Agriculture*, 260 F.3d 1336, 1342 (Fed. Cir. 2001). As the Federal Circuit has explained, "such events must, at a minimum, be considered to place events occurring more immediately preceding the appellant's resignation into the proper context." *Id.* at 1343. In granting the agency's motion to exclude testimony concerning events that occurred before October 10, 2015, the presiding ALJ found *Shoaf* was distinguishable because it did not involve a waiver provision such as the one at issue here. HT (May 10, 2017) at 24-25; ID at 6 n.4. We find, however, that the waiver provision does not preclude us from considering prior events for the limited purpose described in *Shoaf*, i.e., to develop the "contextual landscape" for better understanding the allegedly coercive acts that followed. *See* 260 F.3d at 1343 n.3.

¶11     Accordingly, we remand this case for further development of the record, to include any relevant testimony concerning events preceding the settlement agreement.[8]  The ALJ retains broad discretion to exclude or limit testimony when it has not been shown that the testimony would be relevant, material, and nonrepetitious.  *See, e.g.*, *Box v. U.S. Postal Service*, 51 M.S.P.R. 401, 405 n.2 (1991) (finding that the administrative judge properly limited the appellant's cross-examination of a witness by excluding questions that the appellant failed to show would have produced relevant and material evidence).  When the record has been fully developed, the ALJ should make a new finding as to whether the appellant's resignation constitutes a constructive removal for purposes of 5 U.S.C. § 7521 and 5 C.F.R. § 1201.142.

**ORDER**

¶12     For the reasons discussed above, we remand this case to an ALJ for further adjudication in accordance with this Remand Order.

FOR THE BOARD:                    /s/ for
_____
                                  Jennifer Everling
                                  Acting Clerk of the Board

Washington, D.C.

---

[8] We discern no abuse of discretion in the presiding ALJ's decision not to admit a Standard Form 2810, which indicates that the appellant's enrollment in the Federal Employee Health Benefits program ended effective October 2, 2016.  IAF, Tab 53 at 1, Tab 54 at 96.  Contrary to the appellant's assertions, the document does not indicate the date of her termination and has no apparent relevance to the voluntariness of her resignation.  We have also considered the appellant's allegation that the presiding ALJ made inappropriate comments and interruptions that deprived her of a full and fair hearing.  PFR File, Tab 1 at 17.  However, we find the presiding ALJ's conduct during the hearing does not evidence "a deep-seated favoritism or antagonism that would make fair judgment impossible."  *Bieber v. Department of the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).